IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

PICAYUNE CLINIC, L.L.C.,
D/B/A CROSBY MEMORIAL
HOSPITAL

VS.                                        CIVIL ACTION NO. 2:04cv318-KS-JMR

AYESHA SHABBIR DAR, ET AL

<u>ORDER GRANTING PLAINTIFF/COUNTER DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT</u>

This cause is before the Court on Plaintiff/Counter Defendant, Picayune Clinic, L.L.C., d/b/a Crosby Memorial Hospital's (hereinafter "Crosby") Motion for Summary Judgment. Response has been filed by Ayesha Shabbir Dar, M.D. (hereinafter "Dr. Dar"). The Court after reviewing the motion, response, depositions and other documents on file finds that the Motion for Summary Judgment by Crosby should be **sustained** for the reasons hereinafter stated.

<u>FACTUAL BACKGROUND</u>

On September 1, 2003, Crosby and Dr. Dar entered into a contractual agreement referred to as the "Physician's Assistance Agreement" (hereinafter "Agreement"). The agreement obligated Dr. Dar to obtain and maintain staff privileges at Crosby for a period of three years, as well as to relocate her residence and pediatric practice to Pearl River County, Mississippi. She was also obligated to operate a pediatric practice on a "full-time basis" as defined by the Agreement. Crosby's obligation under the Agreement was for the first twelve months to guarantee Dr. Dar a certain monthly income with installments payable on the fifteenth of each month. The payment was calculated by the formula set forth in the Agreement and was defined

1

by the Agreement as a "guaranteed monthly amount."

During a period from approximately June 4th through June 11, 2004, Dr. Dar decided to close her practice in Picayune and move to another state. Under the terms of the Agreement, if Dr. Dar terminated within the first twelve months she was required to repay, as liquidated damages, all amounts previously paid by Crosby, including all guaranteed monthly amounts. The Agreement additionally provided for interest as set forth therein. The amount claimed to have been paid was $97,275.71, plus $4,562.08 for moving expenses. Dr. Dar has not disputed these amounts.

It is unquestioned that Dr. Dar voluntarily terminated her practice in Pearl River County during the first part of June, 2004. However, she claims that Crosby committed fraud at the time she was induced to execute the Agreement. She alleges that Crosby knew that the other pediatric physicians were leaving at the time the Agreement was signed and also that Crosby knew that one of the primary reasons that she was coming to Picayune was to have other pediatricians with whom to share call. Therefore, the affirmative defense claimed by Dr. Dar is that of "fraud in the inducement."

Following Dr. Dar's departure, Mr. Steve Grimm, the Administrator for Crosby, entered her pediatric office and copied some patient records. The parents of the children whose records were copied were at Crosby Hospital demanding the records and signed HIPAA-compliant authorizations for the records to be copied. Dr. Dar's office was located in the hospital building, and Mr. Grimm apparently honored the parents' requests and copied the children's records for them to take to other doctors. Dr. Dar claims damages as a result of these actions of Mr. Grimm.

APPLICABLE LAW

Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making its determination on a motion for summary judgment, the Court must view the evidence submitted by the parties in the light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on this motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the Court of the basis for its motion and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian v. Ehrman*, 954 F.2d 1125, 1131(5th Cir. 1992). "Rule 56 contemplates a shifting burden: the non-movant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). "Summary judgment cannot be supported solely on the ground that the plaintiff failed to respond to defendant's motion for summary judgment." *Id.* at 709. However, once a properly supported motion for summary judgment is presented, the non-moving party must rebut with "significant probative" evidence. *Ferguson v. National Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978).

ANALYSIS

When this case is broken down to its least common denominator there are only limited

issues involved in its disposition. They are as follows:

1. Did Dr. Dar enter into the Physician's Assistance Agreement with Crosby?

2. Did Dr. Dar breach the Physician's Assistance Agreement?

3. Did Crosby commit fraud in inducing Dr. Dar to enter into the Physician's Assistance Agreement?

4. Does Dr. Dar have a valid counterclaim against Crosby?

Question One: Did Dr. Dar enter into the Physician's Assistance Agreement with Crosby?

There is no dispute that the Agreement was, in fact, executed by Crosby and Dr. Dar. She moved her practice to Picayune, worked for at least seven months and received and negotiated payments that were calculated pursuant to the Agreement. Additionally, Dr. Dar never disputed the fact that she executed the Agreement. Therefore, the answer to the first issue is, yes, Dr. Dar and Crosby did enter into a valid agreement known as the Physician's Assistance Agreement.

Question Two: Did Dr. Dar breach the Agreement?

While Dr. Dar argues that she never resigned from her medical staff privileges at Crosby, it is undisputed that the last time Dr. Dar appeared in her office as a practicing pediatric physician was on or about June 11, 2004. There was a conversation between Dr. Dar and the administrator of Crosby, Mr. Steve Grimm, on or about June 4, 2004. Following the conversation there was a letter sent from Crosby to Dr. Dar on or about June 8, 2004. Dr. Dar was on vacation from June 12 through June 20, but this was during a period following her "resignation" and also following the final date that she operated her practice in Pearl River County.

The contract clearly called for her to maintain a full time pediatric practice in a medical

office space located in Crosby service area for not less than three years; obtain administrative privileges at Crosby during the three-year term of the contract; reside within a certain distance from the hospital; and, as a result, the guaranteed monthly amount would be paid to her by Crosby. The monthly guaranteed payments were conditioned upon her continuous full-time practice for a term of not less than three years.

Unless there is some affirmative defense or excuse for doing as Dr. Dar did, then she, in fact, breached the contract. The answer to the second question is, yes, unless affirmative defenses are shown.

Question Three: Did Crosby commit fraud in inducing Dr. Dar to enter into the Physicians Assistance Agreement?

The crux of this litigation is involved in Dr. Dar's affirmative defense. As stated above, all questions of fact are to be resolved in favor of the non-moving party. The following facts are deemed to be true: (a) a primary reason for Dr. Dar relocating to Picayune was the ability to share call with other pediatric physicians; (b) at the time Dr. Dar negotiated the Agreement and came to Picayune there were three pediatric physicians sharing call; (c) within a period of a few months following her coming to Picayune, the other three pediatric physicians resigned their staff privileges at Crosby and moved out of state.

In January of 2004, Doctors Joan Dupont and Jimmy Kitrell, Jr., resigned their staff privileges. Dr. Hassan Mahmood tendered his written resignation in May of 2004. Dr. Dar claims as an affirmative defense that Mr. Grimm, the hospital administrator, "had knowledge" that these physicians were going to leave prior to entering into the Agreement with Dr. Dar and that he concealed this fact from her in order to induce her to execute the Agreement and relocate

to Picayune.  If this is an issue, then, without doubt, it is material and would prevent the granting of a summary judgment.

In its Motion for Summary Judgment, Crosby attached the deposition of Mr. Steve Grimm wherein Mr. Grimm stated unequivocally that he had no idea or warning that Doctor Dupont, Kitrell or Mahmood would be resigning and leaving Picayune at the time the contract was executed.  (See deposition testimony pages 20-27).  Additionally, the affidavit of Dr. Mahmood, which was submitted in support of the motion, totally refutes the suggestion that Mr. Grimm was aware of Dr. Mahmood's pending resignation at a time prior to the execution of the Agreement.

In her deposition Dr. Dar was questioned as to whether she had any indication that the other pediatric physicians would be leaving prior to their announced resignations, and she answered in the negative.  The movant herein, Crosby, has the initial burden of showing the absence of a genuine of material fact.  *Celotex*, 477 U.S. at 324.  The burden then shifts to thenon-movant, Dr. Dar, to show by documents or testimony that there are specific material facts in issue.  *Calendar v. Ergon, Inc.*, 928 F. Supp. 665, 666 (S.D. Miss. 1996).  This burden is not satisfied with some 'metaphysical doubt as to the material facts,'...by 'conclusory allegations' ... by 'unsubstantiated assertions'... or by only a 'scintilla' of evidence...." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Once Crosby proffered its evidence in the form of the affidavit and depositions, it was up to Dr. Dar to come forth with affidavits, testimony, documents or specific facts within the record that would create a genuine issue of material fact and prevent this Court from entering summary judgment. In Dr. Dar's response to the Motion for Summary Judgment there are legal arguments and allegations, but this Court has

been pointed to no facts or admissible evidence that would place in issue the question of whether Crosby or its agent, Mr. Steve Grimm, had any reason to believe at the time of the execution of the Physician's Assistance Agreement that any of the three pediatric physicians would be leaving within less than a year.  Without any evidence to create a question of fact on this material issue, the submissions of Crosby must be accepted as true. This means that Dr. Dar has totally failed to point this Court to a material issue of fact relative to the affirmative defense of fraud in the inducement. Therefore, this Court finds that Crosby should be granted summary judgment on this affirmative defense.

       Question Four: Does Dr. Dar have a valid counterclaim against Crosby?

       To establish a counterclaim for the HIPAA violation Dr. Dar must establish breach of duty and damages.  Count one of the counterclaim is styled "breach of confidentiality - invasion of privacy."  Count two of the counterclaim is styled "violation of the Health Insurance Portability and Accountability Act."

       These two counts arise out of acts which occurred on or about June 11, 2004, when Mr. Steve Grimm and another employee of Crosby went into the office of Dr. Dar, copied medical files of some of her patients and distributed the copies to the patients.  At this time Dr. Dar had at least verbally given to Mr. Grimm her resignation, which had been confirmed by letter from Mr. Grimm to Dr. Dar.  Dr. Dar was no longer occupying the office that was furnished to her at Crosby Medical Center, and there were approximately fifteen parents of Dr. Dar's former patients who were present at Crosby requesting copies of the medical records.  Mr. Grimm and another hospital employee went into the office armed with HIPAA-compliant releases from all fifteen of the patients, copied the records and gave them to the parents.  These requests were

made by the parents for the purpose of transferring their children to the care of other pediatric physicians in other locations.

When Mr. Grimm copied the records, he was doing something that he was entitled to do. He had an authorization from the parents of the children whose records were copied. The office, which was on the premises of Crosby, had been abandoned by Dr. Dar, never to be returned to by her. Obviously, the children were in need of their medical records for continuation of their medical care.

Additionally, HIPAA does not create a private right of action for disclosure of medical information. *Runkle v. Gonzales*, 391 F. Supp. 2d 210 (D.D.C. 2005) ("No Federal Court has ever found that Congress intended HIPAA to create a private right of action.").

Also, there is no evidence that other than the ones from whom Mr. Grimm had authorizations, any other patient's records were copied. *See Slue v. New York University Medical Center*, 409 F. Supp. 2d 349 (S.D.N.Y. 2006). As a result of no records being copied, other than the ones for which Mr. Grimm had authorization to copy, no privacy rights were violated. Dr. Dar has no standing to make such a claim nor has she suffered damages . Crosby is entitled to summary judgment on the counterclaim also.

The affirmative defense previously discussed, "fraud in the inducement" or, as described by Dr. Dar, "fraudulent concealment," is the only affirmative defense pled in the complaint or amended complaint. In Dr. Dar's response to the Motion for Summary Judgment she raises the issues of impossibility and breach of the obligation of good faith and fair dealing by Crosby. In that these are affirmative defenses, Dr. Dar has the burden of proof. Even if this Court were to find that there were circumstances rendering Dr. Dar's performance in covering call an

impossibility, this is only a valid defense when a party to the contract causes the impossibility. *Red Gate Corp. v. Ladner*, 480 So. 2d 1147 (Miss. 1985).  Dr. Dar points to no facts that establish this.  Further, Dr. Dar is unable to point the Court to any facts that show that Crosby breached the duty of good faith and fair dealing that is implied in any contract.  She has totally failed to point this Court to any question of material fact that would prevent this Court from granting summary judgment.

## AMOUNT OF DAMAGES CLAIMED

Crosby alleges that Dr. Dar was paid $97,275.71 as part of the guaranteed monthly amounts, as well as $4,562.08 for reimbursement of moving expenses. There has been no issue made by Dr. Dar as to the correctness of these amounts. Therefore, this Court will accept the amounts as being the amounts paid pursuant to the contract. Also pursuant to the Agreement, Dr. Dar is to repay these amounts plus interest equal to the prime rate published in the *Wall Street Journal* as of the date of termination, plus six percent per annum.

## CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Plaintiff Picayune Clinic, L.L.C., d/b/a Crosby Memorial Hospital, be and is hereby **granted** summary judgment on all issues and is further granted judgment of and from Defendant Ayesha Shabbir Dar, M.D., in the amount of $101,837.79, plus interest from and after June 11, 2004, at the prime rate as established by the *Wall Street Journal* on said date, plus six percent per annum.

Any other motions pending are hereby dismissed as moot. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED on this, the 5th day of May, 2006.

s/ *Keith Starrett*
UNITED STATES DISTRICT JUDGE